UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

SIGFRIDO TORRES-LAZARINI,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Civil No. 05-1136 (JAF)

**MEMORANDUM ORDER**

This is a medical malpractice suit by Sigfrido Torres-Lazarini, a veteran who, because of his previous military status, sought medical treatment at the San Juan Veterans Administration Hospital ("VA Hospital) for a number of years. A bench trial concluded today.

Plaintiff has a history of previous lawsuits against the Veterans Administration which we list here:

    (1) 85-0796 (PG) - case eventually dismissed;

    (2) 92-1185 (JP) – case dismissed and affirmed on appeal;

    (3) 97-1792 (HL) – settlement reached by the parties;

    (4) 97-1793 (PG) – case dismissed and affirmed on appeal, and

    (5) 04-1511 (RLA) – case dismissed.

In addition to the previous civil litigation, the Plaintiff has been arrested three times at the VA Hospital facilities for apparent disorderly conduct motivated by his disagreements over time with the medical treatment received by him at said hospital. Charges were

Civil No. 05-1136 (JAF)                                          -2-

eventually dismissed. The Plaintiff has engaged in a 52-year-long quest of complaints against the VA Hospital since his Korean conflict service with the Armed Forces.

This case arises from a fall that the Plaintiff sustained on or about September 9, 2002, in his home. The Plaintiff came to the VA Hospital and was seen by Sylvia Rodríguez, M.D., his primary care physician, who has supervised his treatment since the year 1997. The Plaintiff related to Dr. Rodríguez that he fell, injuring his right shoulder, and had pain and difficulty in movement of that upper extremity. X-rays were ordered and a physical examination was performed. Dr. Rodríguez offered Plaintiff pain/anti-inflammatory medication which he did not accept. Dr. Rodríguez then recommended that he apply ice to the injured area.

The September 9, 2002, X-ray showed that this 70+ year-old male had bone spurs in his right shoulder, narrowing of the joint spaces, degenerative illness of the joints, and signs of osteopenia, which is a precursor of osteoporosis. No fractures were found and he was told to return to the clinic in two weeks if he did not improve. Plaintiff did not follow Dr. Rodríguez' advice and did not return to the clinic for follow-up, his next visit being in mid-November 2002.

Dr. Rodríguez testified that by mid-November 2002 the Plaintiff's right shoulder had not improved and physical therapy was recommended, which the Plaintiff declined. She "emphatically" tried to convince him to receive physical therapy, but once again he

declined. Plaintiff, however, accepted that a densitometry study be performed. Dr. Rodríguez also gave him specific instructions for a home exercise program in lieu of the recommended physical therapy.

On December 20, 2002, the Plaintiff visited Dr. Rodríguez and expressed a long history of complaints against the VA Hospital. Specifically, Plaintiff stated that he did not want to return to the VA Hospital ever again. Dr. Rodríguez gave him an open appointment for Plaintiff to come see her whenever he wanted.

There is an emergency room record dated July 9, 2004, generated because of an apparent dental abscess. On that occasion, the Plaintiff again complained about his problems with the VA Hospital, made reference to previous lawsuits he had filed, and expressed that he had a "problem" with Dr. Sylvia Rodríguez. He did not want her as his primary physician anymore.

On August 2, 2004, because of his multiple complaints, the Veterans Administration asked Plaintiff to discuss any issues he had with the hospital facility. He said goodbye to Dr. Rodríguez and confirmed that he did not want any additional evaluations at the VA Hospital. Dr. Rodríguez confronted him on that particular occasion and the Plaintiff assured her that he had no problems with her – he only wanted to resolve administrative matters before receiving further evaluation and treatment.

Because of the multiple complaints that the Plaintiff had presented, arrangements were made for him to meet not only with

Civil No. 05-1136 (JAF)                                                  -4-

Dr. Rodríguez, but also with the Chief-of-Staff at the Hospital. The densitometry study results were explained to him and he was offered follow-up services, including an additional shoulder evaluation which he refused. Eventually, an MRI was ordered and he met with the Chief-of-Staff. The MRI revealed that he had tendon atrophy with full tear of some shoulder tendons.

On August 27, 2004, the Plaintiff returned for follow-up with Dr. Rodríguez. She discussed the status of his right shoulder and a dental problem with him, and he accepted receiving medication for osteopenia. He was again offered physical therapy for the shoulder which he refused until he verified the results of the MRI. The MRI results were discussed with him over a telephone appointment. Because of the many degenerative changes, he was referred for an orthopedic evaluation. The Orthopedics Department conducted an evaluation and offered him shoulder replacement surgery, which he rejected. The Plaintiff had apparently improved somewhat by then but had fallen again in the interim. The shoulder seemed to be the main problem, although a medical condition in a knee appeared to take precedence over the shoulder complaints.

On October 15, 2005, the Plaintiff visited the VA Hospital for an ophthalmologic consultation. While riding a motorcycle, an object lodged in his eye and he visited the VA Hospital to have the condition treated.

The court received the testimony of a reputed Orthopedic surgeon and consultant, Carlos Grovas-Badrena, M.D.  Dr. Grovas checked the medical record from beginning to end, conducted a physical examination of the Plaintiff, and made an assessment.  He found that the treatment offered by the VA Hospital was in full compliance with the standards of the medical profession for the type of soft tissue injury suffered by this elderly veteran.  He found that the fact that an MRI study was not immediately performed when the Plaintiff first visited Dr. Rodríguez on September 9, 2002, is not a deviation of standard, acceptable medical practices.  The X-rays taken on that occasion were negative, Plaintiff refused the conservative treatment offered to him, he missed appointments, rejected physical therapy, and refused to cooperate with the staff at the VA Hospital in assessing and treating his shoulder injury as Dr. Rodríguez originally intended.  The MRI study was not indicated at the time, the same was eventually done more than anything else to please the Plaintiff, who because of his age and multiple falls, had a serious degenerative shoulder condition, in anticipation of a last resort offer of shoulder replacement surgery.

Having had the benefit of assessing issues of credibility, and having perceived the obsession that this Plaintiff has against the VA Hospital and its medical staff, we can only find on this record that Plaintiff failed to prove any medical malpractice on the part of the VA Hospital or its staff as a result of the injuries he suffered when

Civil No. 05-1136 (JAF)                                                      -6-

he fell at home on September 9, 2002.  His subsequent complications were in part his own fault for failing to follow recommended treatment and for failing to recognize that, because of his age, multiple other falls, and degenerative joint illness, nothing could be done on September 9, 2002, to miraculously restore his shoulder to one consistent with that of a younger individual with no disease.

We also find an element of exaggeration in the degree of limitation that this Plaintiff claims to have.  This man, who has suffered from vertigo for years, had enough good movement of his shoulder to ride a motorcycle in 2005.  As Dr. Grovas testified, this requires a substantial amount of flexibility in the arm and shoulder which a person as disabled as Plaintiff claims to be cannot indeed possess.

The case is dismissed for failure to prove any acceptable medical malpractice on the part of Dr. Sylvia Rodríguez or the VA Hospital.

Judgment will be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 25th day of September, 2006.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        U. S. District Judge